**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **ELAINE TALBOT** | ) | **CASE NO.  1:07CV2862** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **CUYAHOGA COUNTY BOARD** | ) | |
| **OF MENTAL RETARDATION AND** | ) | |
| **DEVELOPMENTAL DISABILITIES** | ) | |
| | ) | |
| **Defendant.** | ) | |


**CHRISTOPHER A. BOYKO, J.**:

      This matter comes before the Court upon Defendant Cuyahoga County Board of Mental

Retardation and Developmental Disabilities' ("CCBMR/DD") Motion for Summary Judgment

pursuant to Fed. R. Civ. P. 56.  Plaintiff Elaine Talbot ("Talbot"), alleges race discrimination,

age discrimination, and retaliation, against CCBMR/DD, in violation of Title VII of the Civil

Rights Act, as well as several related Ohio state law claims. For the following reasons,

CCBMR/DD's Motion for Summary Judgment is granted with respect to Talbot's Title VII

claims.  The Court declines to exercise its supplemental jurisdiction over Talbot's remaining

state law claims, which are dismissed without prejudice.

**I.  FACTS**

      Plaintiff Elaine Talbot is a 68 year-old, African American woman.  Talbot was an

employee of Defendant CCBMR/DD from 1980 until August of 2006.  Most recently her

position was as a Secretary in the Operations and Risk Management Departments.  Defendant

CCBMR/DD is an agency providing a variety of services to mentally retarded and developmentally disabled citizens of Cuyahoga County.

The record shows a history of two disputes between Talbot and CCBMR/DD prior to the time period at issue in the current suit.  In 1991, Talbot filed a race discrimination charge with the EEOC alleging that her then supervisor, Robert Butcher, was discriminating against her relative to her salary.  That dispute was rapidly settled with Talbot receiving a raise.  In 1993, Talbot filed a handicap discrimination charge with the EEOC and a Worker's Compensation claim after allegedly suffering from open sores as a result of some substance in the air at her workplace.  That charge evolved into a lawsuit and was eventually settled in 1995 with Talbot returning to work, but in a different building.

Relating to the previous disputes, on February 13, 2006, Talbot wrote to John McLaughlin in CCBMR/DD's Human Resources department to notify him that 80.5 hours of vacation time and 47.8 hours of sick time from 1990 were never credited to her file when she returned to work in 1995.  The very next day, February 14, 2006, Benefits Manager Yvonne Tepfenhart wrote back to Talbot explaining that she had reviewed Talbot's time sheets and corrected the error by crediting Talbot's time bank with 10 days of vacation time and 1 day of sick time.  Talbot does not dispute that the vacation and sick time were credited and, in fact, could not recall the incident at all.

In 2002, Eunice Brown ("Brown"), an African American woman, replaced Robert Butcher as Talbot's immediate supervisor.  Also in 2002, the other secretary in the Operations and Risk Management Departments, Margie Pavone, left, which required Talbot to assume additional duties.

During 2003 and 2004, Talbot began making requests to her supervisors for an upgrade in her position from Secretary to Administrative Assistant.  On one or more occasions, Talbot consulted with CCBMR/DD's Chief Financial Officer, David Visocky ("Visocky"), requesting that her position be upgraded.  Talbot alleges she repeatedly inquired of Visocky about a promotion every time he came by her workplace.  For his part, Visocky could only recall one discussion.  When Talbot inquired of Visocky about a promotion, he referred her to her immediate supervisor, Eunice Brown.  Whenever Talbot mentioned the matter of her promotion to Brown, Brown told Talbot she was  "working on it."  Talbot could not recall any occasion after January of 2005 where she spoke to her supervisors regarding an upgrade.  Talbot never received the requested promotion from Secretary to Administrative Assistant.

In 2005, CCBMR/DD announced an Early Retirement Incentive Program ("ERIP") as part of an effort to downsize the workforce.  As part of the ERIP, CCBMR/DD would purchase two years of service for each retiring employee at a variable cost determined by the Ohio Public Employees Retirement System; in Talbot's case that would increase her retirement pension by about 4.4%, for a total cost to CCBMR/DD of $19,771.81.   The overall goal of the program was that many retiring workers would not be replaced; rather, positions would be restructured in an effort to retain quality workers, with some of the remaining workers transferred to existing positions and others having new positions created for them.  Eligibility for the ERIP was determined by a ranking based on an employee's age and years of service in accordance with Ohio Revised Code section 145.33.

Because Talbot fell within the top 5% of eligible employees, she was informed of her eligibility for the ERIP by letter on June 9, 2005.  The letter advised that employees wishing to

participate in the ERIP must retire between August 1, 2005 and September 1, 2006.  Talbot signed the letter and returned it to CCBMR/DD, indicating that she wished to retire on September 1, 2006 as part of the ERIP.  On March 24, 2006, a second letter was sent by CCBMR/DD to Talbot, seeking confirmation of her desire to retire as part of the ERIP; again, Talbot indicated her intent to retire on September 1, 2006, signed the letter, and returned it to CCBMR/DD.

Once CCBMR/DD became aware that Talbot intended to retire, members of management met to review the position held by Talbot and on the basis of that meeting the position description and duties were changed.  The modified position description was then sent to CCBMR/DD's Human Resources to be classified and was upgraded to Administrative Assistant based on the changes made.  In July of 2006, the newly created position for Administrative Assistant in the Operations Department was posted.  Around the same time in July, Talbot became aware of the newly created position when she received the posting by mail and posted the position opening on the bulletin board in her building.

CCBMR/DD has a formal process for promotion and application to vacant positions. Talbot does not dispute the existence of CCBMR/DD's formal application process.  All those who submitted an application for the Administrative Assistant position were Caucasian.  Of the individuals who submitted applications, four were interviewed and Sue Stillman, a Caucasian woman, was ultimately selected over the other finalist, Lynda McAndrews, also a Caucasian.

Talbot never submitted an application for the posted Administrative Assistant position. According to Talbot, a few days before the deadline on the posting for the Administrative Assistant position, Talbot mentioned to her immediate supervisor, Eunice Brown, that she was

-4-

"thinking about not retiring," and instead was "thinking of staying on and becoming an administrative assistant."  Brown then told Talbot "not to bother" because the position had already been taken by Sue Stillman.  Thus, Talbot stayed on in her position as Secretary.  Talbot assisted in the training of Sue Stillman for her last few weeks, until her retirement on September 1, 2006.

On August 30, 2006, two days before her retirement, Talbot filed a charge with the EEOC alleging that CCBMR/DD had discriminated against her on the basis of race by failing to promote her and instead giving the Administrative Assistant position to a Caucasian woman.  On July 18, 2007, the EEOC sent Talbot notice that it was dismissing her charge of racial discrimination and of her right to sue.  On September 20, 2007, Talbot filed the suit at bar, alleging CCBMR/DD discriminated against her on the basis of race, age, and retaliation for her previous EEOC charges in violation of Title VII, along with a variety of state law claims.  CCBMR/DD now moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).  The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When a motion for summary judgment is properly made and supported" the initial burden shifts to the

opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  A fact is material only if its resolution "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true."  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Circ. 1996).  Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute.  *Anderson*, 477 U.S. at 249-250.

## B.  Talbot's Age Discrimination and Retaliation Claims under Title VII

Talbot's Complaint alleges that CCBMR/DD's failure to promote her to an Administrative Assistant constitutes discrimination based on age in violation of Title VII; likewise, she alleges that this discriminatory failure to promote her amounted to a constructive termination, also in violation of Title VII.  (Compl. ¶ 14, 18-19).  In addition, Talbot alleges that CCBMR/DD's failure to promote her was retaliation in connection with her previous filing of charges with the EEOC.  (Compl. ¶ 20; Pl.'s Br. Opp'n Summ. J. at 10-13).  CCBMR/DD argues that Talbot's claims predicated on age discrimination and retaliation are both procedurally flawed; namely, that this Court lacks subject matter jurisdiction over those claims because Talbot failed to exhaust her administrative remedies.  (Def.'s Mot. Summ. J. at 13-15).

As CCBMR/DD correctly points out, exhaustion of administrative remedies is an essential prerequisite for a federal district court to have subject matter jurisdiction over a Title VII claim.  "In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation."  *Granderson v. Univ. of Michigan*, 211 Fed. Appx. 398, 400 (6th Cir. 2006) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-181 (1989)).  A plaintiff is not given the "green light" to bring suit under Title VII until those administrative remedies have been exhausted.  *Id.*; *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII...may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief").

Specifically, federal court subject matter jurisdiction is limited to claims that have been

-7-

previously raised in an EEOC charge.  "It is well settled that federal courts do not have subject

matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an

EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."

*Strouss v. Michigan Dept. of Corr.*,  250 F.3d 336, 342 (6th Cir. 2001).  This requirement applies

to both age discrimination and retaliation claims.

      Although retaliation claims stemming from the filing of a *currently pending* EEOC

charge need not be included in that charge,  "retaliation claims based on conduct that occurred

*before* the filing of the EEOC charge must be included in that charge."  *Id.* (emphasis in original)

(citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991)).  In other words, a

claimant is not expected, nor required, to allege retaliation in the very EEOC charge that sparked

the retaliation; meeting such a requirement would be impossible.  However, when a claimant

files a *new* EEOC charge based on retaliation over a *previous* EEOC charge, that retaliation must

be alleged *in* the new charge.

      In the case at bar, Talbot filed an EEOC charge alleging only that CCBMR/DD had

discriminated against her on the basis of race.  (Pl.'s Br. Opp'n Summ. J. Ex. 13).  Talbot's

EEOC charge does not contain the word "retaliation," contains no facts that would indicate to

EEOC that it should investigate the possibility of retaliation, and in the section where the

claimant is asked to check a box provided next to the basis of discrimination, the box for

"retaliation" was left unchecked.  *Id.*  Therefore, Talbot's EEOC charge neither makes an

explicit claim of retaliation stemming from her previous EEOC filings more than ten years

earlier, nor could such a claim be reasonably expected to grow out of the claim of current racial

discrimination actually alleged in Talbot's EEOC charge.  As such, Talbot has failed to exhaust

her administrative remedies with the EEOC, and this Court lacks subject matter jurisdiction to hear her retaliation claim.

      Likewise, an aggrieved party must "file a charge with the EEOC before filing a complaint alleging age discrimination in federal court"; under the ADEA, an EEOC filing is a "jurisdictional prerequisite to filing a civil action." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Again, the aggrieved party is not absolutely confined to the explicit claims filed in the EEOC charge, but may also pursue any claims that may be reasonably expected to grow out of the EEOC charge. *Id.* at 463-64. However, a claim of age discrimination cannot be reasonably expected to grow out of a claim of race discrimination without additional allegations that would prompt EEOC to investigate age discrimination. *Id.* at 464-65. Moreover, indications of the claimant's birth date or length of employment in the EEOC charge are insufficient to provide the additional allegations needed for an age discrimination claim to grow out of a race discrimination claim. *Id.* at 464.

      Talbot's EEOC charge makes no mention of age and indicates no facts that would prompt the EEOC to anticipate that such a claim might grow out of the racial discrimination alleged. In Talbot's EEOC charge the word "age" does not even appear, aside from Talbot's date of birth on the form, neither her nor Sue Stillman's ages are mentioned, and the box for discrimination on the basis of age remains unchecked. (Pl.'s Br. Opp'n Summ. J. Ex. 13). Therefore, Talbot's EEOC charge neither makes an explicit claim of age discrimination, nor could such a claim be reasonably expected to grow out of the claim of racial discrimination actually alleged in Talbot's EEOC charge. As such, Talbot has failed to exhaust her administrative remedies with the EEOC, and this Court lacks subject matter jurisdiction to hear her age discrimination claim.

Talbot makes no attempt to dispute CCBMR/DD's arguments that this Court lacks subject matter jurisdiction to hear her age discrimination and retaliation claims.  (*See generally*, Pl.'s Br. Opp'n Summ. J.).  There is no genuine issue of material fact regarding whether Talbot included the age discrimination and retaliation claims in her EEOC charge; she did not.  As a matter of law, this court lacks subject matter jurisdiction to hear those claims and therefore, CCBMR/DD's motion for summary judgment is granted with regard to those claims.

### C.  Talbot's Title VII Claims Predicated on CCBMR/DD's Actions Prior to January 2005

In large part, Talbot's Title VII claims for race discrimination, age discrimination, and retaliation are based on incidents occurring prior to January 2005.  As CCBMR/DD correctly argues (Def.'s Mot. Summ. J. at 8-9), any claims predicated on actions occurring prior to January 2005 are barred by the applicable statute of limitations.

"The Title VII plaintiff satisfies the prerequisites to a federal action (1) by filing *timely* charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notice of the right to sue."  *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (emphasis added).  The requirement of timely filing a claim with the EEOC, set forth in 42 U.S.C. § 2000e-5(e)(1), operates as a condition precedent to suit, in essentially the same manner as a statute of limitations.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (U.S. 1982); *Puckett*, 889 F.2d at 1486.

Under the statute of limitations set forth in 42 U.S.C. § 2000e-5(e)(1), claims implicating alleged discriminatory action that occurred more than 180 days before the filing of an EEOC charge are barred.  *Burns v. Sofa Express*, No. C2-00-01342, 2002 U.S. Dist. LEXIS 23247, at *7 (S.D. Ohio Oct. 31, 2002).  However, in a state such as Ohio that has its own laws prohibiting

discrimination (a so-called "deferral state"), the statute of limitations is extended to 300 days

from the date of the alleged discrimination for charges filed with the Ohio Civil Rights

Commission.  *Id.* (citing *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 407 (6th

Cir. 1999)).  Thus, in Ohio, a claimant must file a charge of discrimination within 300 days of

the alleged discriminatory action or any suit thereon is barred for lack of administrative

exhaustion.  *Id.*; *accord Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir.

2000).

Talbot's claims relating to CCBMR/DD's actions prior to January 2005 fall into two

distinct categories: (1) race discrimination, age discrimination, and retaliation claims based on

CCBMR/DD's failure to promote Talbot despite her requests from 2003 to 2005 and (2) a

retaliation claim based on CCBMR/DD's failure to properly credit Talbot's vacation and sick

time in 1995.

Assuming, *arguendo*, that Talbot's retaliation claims are not barred by her failure to raise

retaliation in her EEOC charge, the 300-day statute of limitations bars any claim of retaliation

Talbot now attempts to make stemming from the improperly credited vacation and sick time.

Putting aside the fact that Talbot did not raise the issue of her improperly credited vacation and

sick leave for the first time until her Brief in Opposition of Summary Judgment (Pl.'s Br. Opp'n

Summ. J. at 7, 10-11), that she waited eleven years to address the discrepancy with CCBMR/DD

(Pl.'s Br. Opp'n Summ. J. Ex. 6), that CCBMR/DD immediately corrected the error the next day

(Talbot Dep. at Ex. F), and that the incident was of so little consequence that Talbot could not

even recall it later (Talbot Dep. at 26, l. 15-20), the incident is so far beyond the 300-day statute

of limitations that it borders on frivolous.  Talbot's own letter to John McLaughlin indicates that

the failure to credit her time bank occurred when she returned to work in 1995.  Even assuming, *arguendo*, that CCBMR/DD's failure to credit the time was intentional retaliation for Talbot's earlier EEOC charges, raising that claim of retaliation some eleven years after the occurrence of the discriminatory action is clearly barred by the 300-day statute of limitations.

Likewise, the vast majority of CCBMR/DD's actions upon which Talbot predicates her Title VII claims of race discrimination, age discrimination, and retaliation are beyond the statute of limitations period and thus, do not provide an actionable basis for a Title VII claim.  Talbot alleges that prior to January 2005 she repeatedly requested a promotion from various supervisors, but was denied for discriminatory reasons.  (Talbot Dep. at 50-54; Talbot Aff. ¶ 7; Pl.'s Br. Opp'n Summ. J. Ex. 13).  However, in her deposition Talbot testified that she could not recall any incident after January 2005 in which she inquired of her supervisors regarding a promotion.  (Talbot Dep. at 54, l. 18 to 55, l. 15; Ex. A).  Moreover, Talbot's EEOC charge indicates that the discrimination for which she was complaining occurred at the "earliest 7-12-2006" and "latest 7-12-2006."  (Pl.'s Br. Opp'n Summ. J. Ex. 13).  Likewise, Visocky could only remember one incident where Talbot inquired of him about promotion and that was prior to January 2005.  (Visocky Dep. at 16, l. 3-21; 19, l. 14 to 20, l. 16; 22, l. 6-21; Visocky Aff. ¶ 5).

Given Talbot's failure to identify any requests for promotion after January 2005, there is no *genuine* issue of material fact that she stopped inquiring about promotion after January 2005.  A court is "not obligated to treat a naked assertion in a litigation document as establishing a 'fact' when [the plaintiff] admits to having neither personal knowledge nor other evidence to support his claim."  *Wysong v. City of Heath*, 260 Fed. Appx. 848, 857 (6th Cir. 2008) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)).  When the

plaintiff cannot recall a crucial event in the face of defendant's admissible evidence, the plaintiff "cannot beat something with nothing."  *Id.* at 858.  While Talbot states she "requested a promotion to a position of Administrative Assistant from 2003 through 2006 in conversations with Eunice Brown and David Visocky on numerous occasions" (Talbot Aff. ¶ 7), a self-serving affidavit is insufficient to raise a genuine issue of material fact in the face of earlier, contrary deposition testimony.  *In re Best*, 109 Fed. Appx. 1, 10 (6th Cir. 2004).

Thus, even construing all the evidence in the light most favorable to Talbot, there is no genuine issue of material fact that the only potential inquiry into promotion that Talbot made after January 2005 was made to Eunice Brown in July of 2006 relating to the newly created Administrative Assistant position.  Talbot filed her EEOC charge on August 30, 2006.  (Pl.'s Br. Opp'n Summ. J. Ex. 13).  At that time, any other requested promotions occurring prior to January 2005 were well beyond the 300-day statute of limitations.  As a matter of law, claims predicated on actions by CCBMR/DD prior to January 2005 were barred at the time Talbot filed her EEOC charge.  The timely filing of those claims in an EEOC charge are a condition precedent to bringing suit on those claims before this Court.  Therefore, CCBMR/DD's motion for summary judgment is granted with regard to all claims arising prior to January 2005.

**D.  Talbot's Title VII Race Discrimination Claims Arising Out of the Failure to Promote**

Talbot's remaining claims for racial discrimination in violation of Title VII both arise out of CCBMR/DD's failure to promote her to the newly created Administrative Assistant position in July of 2006.  Specifically, Talbot alleges racially discriminatory failure to promote in violation of Title VII, as well as constructive termination stemming from that failure to promote. (Compl. ¶ 14, 18-20).  CCBMR/DD argues it is entitled to summary judgment on these

-13-

remaining Title VII claims because the undisputed facts show that Talbot never applied for the Administrative Assistant position and therefore, as a matter of law, Talbot fails to make out a prima facie case of race discrimination in violation of Title VII.  (Def.'s Mot. Summ. J. at 18-20; Reply Supp. Def.'s Mot. Summ. J. at 3, 14-19).

"In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (6th Cir. 2003).  Talbot does not present direct evidence of discrimination, instead relying on a circumstantial approach.  (Pl.'s Br. Opp'n Summ. J at 5-7).  The circumstantial approach requires the plaintiff to present a prima facie case, which then creates a rebuttable presumption of unlawful discrimination.  *Johnson*, 319 F.3d at 866.

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) *that he applied* and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (emphasis added).

To begin, Talbot's burden is identical under the discriminatory failure to promote claim and the constructive termination claim.  "Constructive discharge is not itself a cause of action, but rather a means of proving the element of an adverse employment action where the employee resigns instead of being fired." *Fernandez v. City of Pataskala*, No. 2:05-cv-75, 2006 U.S. Dist. LEXIS 82136 (S.D. Ohio Nov. 9, 2006).  Indeed, the crux of Talbot's constructive termination claim in Count II is that CCBMR/DD's discriminatory refusal to consider her for promotion

-14-

placed Talbot in a position where she had no choice but accept early retirement.  (Compl. ¶ 18; Pl.'s Br. Opp'n Summ. J. at 7-10).  Thus, to succeed on the failure to promote claim in Count I and the constructive termination claim in Count II, Talbot must make a prima facie showing that CCBMR/DD's failure to promote her constituted racial discrimination in violation of Title VII.

Talbot fails to make her prima facie case of racial discrimination because she cannot show a required element of the second prong under the *McDonnell Douglas* four-part test, that she applied for the position in question.  When the employer has a formal application process, submission of an application pursuant to that process is an essential part of the second prong of the *McDonnell Douglas* test to show a prima facie case of race discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  For example, in *Williams v. Hevi-Duty Elec. Co.*, the plaintiff failed to make a prima facie case of discriminatory failure to promote under *McDonnell Douglas* because he had never applied for the open position.  819 F.2d 620, 629 (6th Cir. 1987).  The company's policy that it would only consider written applications "constituted a rational, racially neutral mechanism for limiting the number of prospective employees who would have to be considered."  *Id.*; *accord McGhee v. Technicolor Distrib. Co.*, No. 00-5194, 2000 U.S. App. LEXIS 29139 (6th Cir. Nov. 7, 2000) (holding that plaintiff "failed to state a claim for failure to hire concerning other vacancies because he did not apply for those positions").  Moreover, previously expressed interest in the same or similar position is not sufficient when a formal application process exists.  *Williams*, 819 F.2d at 630 ("[W]hen [the company] decided to start accepting applications it was not required to seek out all who could be said to have given a 'generalized expression of interest' in the past...and invite them to apply for work"); *accord Watson v. City of Cleveland*, 202 Fed. Appx. 844, 855 (6th Cir. 2006) (plaintiff "merely inquired

-15-

about" open position, but never applied for the position, defeating her prima facie case of discriminatory failure to promote).

The undisputed facts show that Talbot never formally applied for the Administrative Assistant position.  (McLaughlin Aff. ¶ 18; Visocky Aff. ¶ 7; Talbot Dep. at 18, l. 19 to 19, l. 6).  Talbot had *previously* requested a promotion to a similar position.  (Talbot Aff. ¶ 7; Talbot Dep. at 50, l. 2-18; 52, l. 19 to 53, l. 5; 54, l. 10-13; Visocky Aff. ¶ 5).  Later, Talbot told her immediate supervisor, Eunice Brown, that she was "thinking of staying on and becoming an administrative assistant."  (Talbot Dep. at 82, l. 1-12).  But the law is clear; Talbot "merely inquired" about the new Administrative Assistant position and CCBMR/DD was not required to "seek out" Talbot to invite her application simply because she had expressed interest in a similar position in the past.

Talbot argues that her failure to formally apply for the position of Administrative Assistant is not fatal to her prima facie case of discrimination, citing *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341 (3rd Cir. 1990).  In *Metal Service*, two African American plaintiffs sought employment with the defendant, but were instead directed to apply through a third-party referral service used by the defendant.  *Id.* at 344.  When the plaintiffs later challenged defendant's failure to hire them, the defendant asserted there was no evidence that the referral service had ever passed along plaintiffs' applications to defendant and thus, defendant could not have discriminated against them in its hiring decisions.  *Id.* at 344.  In rebuttal, the plaintiffs presented evidence that while their applications through the third-party referral service never resulted in an interview, the defendant circumvented its own application procedure and directly hired six Caucasians by "word-of-mouth" hiring during the time period in question.  *Id.*  In light of that

-16-

evidence, the Third Circuit held that the plaintiffs had sufficiently applied for purposes of making a prima facie showing under the *McDonnell Douglas* test because the plaintiffs "made every reasonable attempt to convey [their] interest in the job to the employer." *Id.* at 348.  The court explained that result, stating, "[a] relaxation of the application element of the prima facie case is especially appropriate when the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect." *Id.* at 349.

*Metal Service* was distinguished in *Grant v. Harcourt Brace & Co.*, 12 F. Supp. 2d 748, 755 (S.D. Ohio 1998).  There the court noted that "even in *Metal Service*, the Third Circuit found that a prima facie case was established because, in part, the plaintiffs 'followed precisely the procedure established by Metal Service for how a person applies for a job at the company.'" *Id.*  In contrast, the relaxed application standard established in *Metal Services* was inapplicable in *Grant* because the plaintiff had not "followed precisely the procedure established...for how a person applies for a job at the company" and had only given notice of his interest in the position "at the 'eleventh hour.'" *Id.*  Moreover, the plaintiff's assertion that the application and interview requirement "was a 'sham'" lacked any evidentiary basis; the only employee, similarly situated in all respects save the asserted basis of discrimination, had only been hired after undergoing the application and interview process. *Id.*  at 756.

The relaxation of the application element allowed in *Metal Services* is inapplicable to the facts of the case at bar.  There is nothing to indicate that the hiring process itself at CCBMR/DD was discriminatory or otherwise suspect.  Talbot was fully aware that CCBMR/DD had created a new position for Administrative Assistant in the Operations Department and that applications

-17-

would be accepted; indeed, Talbot herself posted the position opening in her building on July 12, 2006.  (Talbot Dep. at 17, l. 13 to 18, l. 18; Pl.'s Br. Opp'n Summ. J. Ex. 13; Compl. ¶ 6).  There is no allegation that the application and interview process was a sham or that Sue Stillman was hired without going through the application and interview process.

Talbot argues that when she expressed interest in the position to Eunice Brown, she was told "not to bother" as the position had been "taken by Sue Stillman."  (Comp. ¶ 10; Talbot Aff. ¶ 10; Talbot Dep. at 18, l. 22 to 19, l. 16; 83, l. 14 to 84, l. 9).  Talbot's recollection about when this conversation even occurred is imprecise.  (Talbot Dep. at 82-83 ( "a few days before" July 22, 2006); Talbot Aff. ¶ 10 ("July 18 or 19, 2006").  As CCBMR/DD points out, Talbot's Complaint alleges that only "[o]n or after August 2006" did she became aware "other white employees...were considered for the position."  (Compl. ¶  10; Reply Supp. Def.'s Mot. Summ. J. at 15).  Talbot then alleges "[i]mmediately upon discovery of this conduct, Plaintiff asks to be considered for the position."  (Compl. ¶ 11).  CCBMR/DD correctly argues that these statements in the Complaint could be considered admissions against interest.  *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir.1971); *Cancino v. Yamaha Motor Corp., U.S.A.*, 494 F. Supp. 2d 664, 667 (S.D. Ohio 2005).  Based on Talbot's allegations in the Complaint, Talbot appears to admit that she did not inquire about the Administrative Assistant position until sometime in August after the position had already been given to Sue Stillman.

Even assuming, *arguendo*, that Talbot's conversation with Brown occurred in July a few days before the posting deadline, Talbot presents no evidence Brown's statement, "the position had been taken ," was pretextual or false.  Brown identified Sue Stillman, by name, as having already taken the position.  Moreover, there is no reason to believe that CCBMR/DD pre-

-18-

orchestrated the hiring of Sue Stillman because until the moment that Talbot mentioned staying

on to Eunice Brown, CCBMR/DD was operating under an unqualified expression of Talbot's

intent to retire on September 1, 2006, as part of the ERIP.  (McLaughlin Aff. ¶ 13-15; Talbot

Dep. at 22-24, Ex. C, D; Talbot Aff. ¶ 9).  At most, CCBMR/DD disregarded its own deadline

and hired Stillman before July 22, 2006.  Nonetheless, that could not be considered

discrimination against Talbot given that at that time CCBMR/DD believed she was retiring.

Regardless, as in *Grant*, Talbot did not make "every reasonable attempt to convey [her] interest

in the job" to CCBMR/DD.  Instead, she too waited until "the eleventh hour" to express any

interest and *never* formally applied for the position.  That failure to formally apply is fatal to

Talbot's prima facie case as a matter of law.

Talbot also cites *DeMaio v. Bed, Bath & Beyond of King of Prussia, Inc.*, No.

Civ.A.2:03-CV-5957, 2005 WL 174842 (E.D. Pa. Jan. 25, 2005), for the proposition that failure

to formally apply for a position will not defeat a prima facie case of racial discrimination by

failure to promote.  The facts in *DeMaio* are also distinguishable from the facts in this case.  In

*DeMaio*, the plaintiff asserted a charge of racially discriminatory failure to promote after she

"communicated her desire to train for [an] operations manager position" to her supervisor.  *Id.* at

*4.  Construing the facts in the light most favorable to the plaintiff, the court held she was

"essentially an applicant for the position of operations manager" because there was "no evidence

in the record that [the defendant] engaged in a formal hiring process for the operations manager

position." *Id.*  Talbot also cites *Rogers v. Alternative Res. Corp.*,  440 F. Supp. 2d 366 (D.N.J.

2006), for the same proposition.  There too, the application requirement was relaxed because the

defendant had "no formal application process for promotion."  *Id.* at 371-72.  In contrast to

-19-

*DeMaio* and *Rogers*, CCBMR/DD did have a formal application process for hiring and promotion that Talbot simply ignored.  Thus, *DeMaio* and *Rogers*'s relaxation of the application requirement is inapplicable to this case.

Finally, Talbot's two previous EEOC filings and her formal request for corrected vacation and sick time all support her knowledge that established procedures must be followed in order to obtain her requested relief.

In summation, the uncontested evidence presents no genuine issue of material fact and fully supports CCBMR/DD's contention that it believed Talbot intended to retire and that when Talbot later expressed interest in the Administrative Assistant position, it had already been given to Sue Stillman pursuant to the normal application process.  The undisputed evidence also shows that Talbot was aware of CCBMR/DD's formal application process, but chose not to formally apply for the position.  Talbot  presents no evidence sufficient to overcome the application element of the second prong of the *McDonnell Douglas* test; therefore, her prima facie case of racial discrimination in violation of Title VII fails as a matter of law.  Because Talbot fails to establish an "essential element" of her prima facie case, CCBMR/DD is entitled to summary judgment on the Title VII race discrimination claims.  *Tolton*, 48 F.3d at 941.  Thus, CCBMR/DD's motion for summary judgment on the remaining Title VII race discrimination claims is granted.

## E.  Talbot's Remaining State Law Claims

With the resolution of Talbot's federal Title VII claims, the remaining claims are founded in state law only.  When a district court has dismissed all claims over which it had original jurisdiction, the court has discretion to "decline to exercise supplemental jurisdiction" over state

law claims with respect to which it initially asserted jurisdiction.  28 U.S.C. § 1367(c)(3).

[W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider

and weigh in each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156,

173 (1997).  Upon due consideration, this Court finds those values would not be best served by

exercise of this Court's supplemental jurisdiction.  Therefore, the Court declines to exercise its

supplemental jurisdiction over the remaining state law claims and such claims are dismissed

without prejudice.

## III.  CONCLUSION

Based on the undisputed evidence, this Court lacks subject matter jurisdiction over

Talbot's Title VII claims for age discrimination and retaliation because Talbot failed to exhaust

her administrative remedies by filing a charge with the EEOC regarding those claims.  Likewise,

the pertinent statute of limitations bars all Talbot's Title VII claims of race discrimination, age

discrimination, and retaliation arising out of CCBMR/DD's conduct prior to January 2005.

Lastly, Talbot fails to make her prima facie case on her remaining Title VII race discrimination

claims arising out of CCBMR/DD's failure to promote her to the Administrative Assistant

position created in July 2006.  There is no genuine issue of material fact that CCBMR/DD had a

formal application process and that Talbot did not submit an application pursuant to that process.

Thus, as a matter of law, Talbot cannot make out her prima facie case of racially discriminatory

failure to promote.  Likewise, Talbot cannot succeed on her constructive termination claim

because it is rooted in an argument that CCBMR/DD's discriminatory failure to promote her

forced her to retire.  Therefore, the Court grants CCBMR/DD's motion for summary judgment

with regard to all Talbot's claims under Title VII.  Further, given that the remaining claims are founded in state law alone, the Court declines exercise of its supplemental jurisdiction over the remaining claims, which are dismissed without prejudice.

      IT IS SO ORDERED.


February 6, 2009        s/ Christopher A. Boyko
Date                  CHRISTOPHER A. BOYKO
                      United States District Judge